S07A0471. PETERSON v. THE STATE.
(647 SE2d 592)

HINES, Justice.

Terri Lynn Peterson ("Peterson") appeals from her conviction for malice murder in connection with the death of her five-year-old nephew, Terrell Peterson ("Terrell"). For the reasons that follow, we affirm.[1]

---

[1] Terrell died on January 15, 1998. On May 12, 1998, a Fulton County grand jury indicted Peterson, together with Pharina S. Peterson and Calvin Pittman, for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of aggravated battery, felony murder while in the commission of cruelty to a child, aggravated assault, aggravated battery, and cruelty to a child in the first degree; Peterson and Pittman were also charged with an additional count of cruelty to a child in the first degree. The trial court granted Peterson's motion to suppress, the State appealed, and this Court reversed. See *State v. Peterson*, 273 Ga. 657 (543 SE2d 692) (2001). Peterson was tried alone before a jury December 2-17, 2002, and found guilty of all charges. On January 31, 2003, the trial court sentenced

Construed to support the verdicts and judgment of conviction, the evidence showed that Terrell lived with Peterson, her boyfriend Calvin Pittman, Peterson's mother Pharina Peterson, and Terrell's brother Tommy Peterson and sister Tasha Peterson; at the time of Terrell's death, Tasha was eleven years old and Tommy was six years old. Along with her mother, Peterson raised the children, and was responsible for feeding and disciplining Terrell.

Peterson telephoned 911 when Terrell was not breathing. Terrell arrived at the hospital in cardiac arrest and died 45 minutes later. The treating physician contacted the police because Terrell displayed the worst symptoms of child abuse that the physician had seen. Terrell had a recurring pattern of abrasions from the back of his head to the bottom of his feet, which indicated that a telephone cord, belt, and dog collar were used to beat him for as much as a year prior to his death. Bruises and scars covered his face in varying hues of purple, depending on the age of the wounds. Ligature marks encircled his wrists, and Terrrell's DNA was found on a pair of pantyhose used to bind him, as well as on a belt and dog collar. Swollen lips and lacerations to the mouth revealed that someone had fed him aggressively; scarring to the mouth indicated repeated forceful feeding. The medical examiner determined Terrell's death to be a homicide from chronic and acute abuse, with recent and remote blunt impact injuries to the head, trunk, and extremities.

Peterson, Tasha, and Tommy told the police that Terrell slept on a pallet in the hallway and was tied up when he was bad, and Peterson said that he was "always bad." Terrell was permitted to eat only grits, rice, or oatmeal. He was malnourished and lacked body fat.

Tasha testified that Peterson whipped Terrell with an extension cord and hit him with her hand, and that she ordered Tasha and Tommy to beat Terrell. Peterson tied Terrell to a banister for most of every day and made him sleep nearby on a pallet in the hallway. She fed Terrell roughly with a large spoon. As punishment, she made him stand on a heating grate, burning his foot so badly that he needed a skin graft to save it. Peterson treated Terrell this way because she

Peterson to a term of life in prison for malice murder; the trial court determined that all other counts of the indictment merged with the malice murder or stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Peterson filed a motion for new trial on March 2, 2003. Appellate counsel was appointed on June 18, 2004, and on February 22, 2005, Peterson filed a motion for permission to file an out-of-time motion for new trial, which motion was granted that same day. Peterson filed a motion for new trial on March 9, 2005, and amended the motion on May 26, 2005, and again on November 14, 2005; the motion as amended was denied on December 19, 2005. Peterson filed her notice of appeal on January 18, 2006, her appeal was docketed in this Court on December 4, 2006, and submitted for decision on January 29, 2007.

believed that he was not actually her nephew, but had been fathered by someone other than her brother.

Terrell's teachers reported that he had a ravenous hunger at school. He sometimes stole food from them, and once attempted to eat out of a garbage can. Peterson told Terrell's teachers to feed him less so that he would not defecate on the floor. At home, Peterson fed Terrell only barley, oatmeal, and water. Peterson repeatedly forced Terrell to eat waste from the toilet.

1. Peterson contends that the evidence was insufficient, asserting that the evidence did not demonstrate that she was the perpetrator of any acts that resulted in Terrell's death. There was ample evidence presented showing that Peterson struck and beat Terrell, and deprived him of necessary nutrition, as alleged in the indictment, and that these actions caused the child's death. The jury was authorized to find Peterson guilty beyond a reasonable doubt of the crime of which she was convicted and for which she was sentenced. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During jury voir dire, Peterson sought to strike several prospective jurors for cause, and now challenges the trial court's refusal to strike eight of these prospective jurors.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Id.; *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). Nor is excusal required when a potential juror states that he or she will "try" to decide the case based upon the court's instructions and the evidence. *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999); *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998); *Garland*, supra. A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

*Corza v. State*, 273 Ga. 164, 166 (3) (539 SE2d 149) (2000).

(a) Peterson sought to strike four prospective jurors who had gleaned some knowledge of the case from news coverage, asserting that their knowledge relieved the State of a portion of its burden of proof. However, all four of these prospective jurors stated that they would decide the case based on the law and the evidence presented, and the trial court did not abuse its discretion in denying Peterson's motions to strike these jurors. See *Lawler v. State*, 276 Ga. 229, 235 (5) (576 SE2d 841) (2003); *Spivey v. State*, 253 Ga. 187, 196 (6) (d) (319 SE2d 420) (1984).

(b) Peterson contends that, because a child was the victim, two prospective jurors had formed opinions regarding the case that would require that Peterson prove that she did not kill Terrell. However, the prospective jurors' responses to questions do not show that they had formed fixed and definite opinions regarding the case. Additionally, after they were questioned further and informed of the instructions the trial court would administer, both prospective jurors stated they could decide the case based upon the evidence and the court's instructions. It was not an abuse of discretion to refuse to strike these prospective jurors. *Roberts v. State*, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003).

(c) Peterson asserted in the trial court that two prospective jurors were biased against her and needed to be struck for cause. Again, the prospective jurors stated that they could appropriately decide Peterson's guilt, and, as the record does not reveal that these prospective jurors had formed a "fixed and implacable opinion" as to Peterson's guilt, the trial court did not abuse its discretion in denying the motions to strike these prospective jurors. *Cox v. State*, 279 Ga. 223, 226 (5) (610 SE2d 521) (2005).

3. Peterson advances several instances of prosecutorial misconduct. However, Peterson did not object to the State's allegedly improper remarks during its opening statement, the State's implication during closing argument that a witness testified who in fact did not do so, or to the State's religious reference made during its closing argument, and thus she has waived review of any error based on those instances. *Smith v. State*, 277 Ga. 213, 218 (11) (a) (586 SE2d 639) (2003); *Phillips v. State*, 275 Ga. 595, 598 (5) (571 SE2d 361) (2002).[2]

When the State cross-examined Peterson, it noted the conflict between her testimony and that of other witnesses, and asked her whether the other witnesses had lied, or had bad memories. However,

---

[2] To the extent that Peterson preserved an enumeration of error based on the fact that, on re-direct examination, the State asked Tasha if she was a religious and truthful person, in response to Peterson's earlier objection, the court correctly observed that Peterson had introduced this line of questioning on cross-examination by exploring the witness's belief system. See *Flanders v. State*, 279 Ga. 35, 39 (7) (609 SE2d 346) (2005).

the questions posed to Peterson served to point out conflicts in the evidence, the jury was properly charged regarding its duty to resolve questions of witness credibility, and there was no reversible error. See *Carreker v. State*, 273 Ga. 371, 372 (3) (541 SE2d 364) (2001); *Whatley v. State*, 270 Ga. 296, 301 (13) (509 SE2d 45) (1998).

During closing argument, the State referred to Peterson as "evil" and untruthful. Peterson objected, and the court properly instructed the jury that closing arguments were not evidence. Further, the State's characterizations were permissible given the evidence, and such oratory is not error requiring reversal. *Harris v. State*, 279 Ga. 522, 525 (4) (615 SE2d 532) (2005); *Simmons v. State*, 266 Ga. 223, 228 (6) (b) (466 SE2d 205) (1996).

4. Peterson claims that trial counsel failed in several respects to provide effective representation. In order to prevail on this claim, Peterson must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to her defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of her trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) In its opening statement, the State, referring to Terrell's brother who was six years old at the time of Terrell's death, said:

> I don't expect you will hear from Tommy Peterson in this trial. If you do hear anything about him, I think the evidence will be that he is too traumatized to be able to testify to you. So you will not be hearing from Tommy because of that, because of his condition from this and from seeing what he saw.

Peterson contends that her trial counsel was ineffective for not objecting to this portion of the opening statement.

During the hearing on Peterson's motion for new trial, trial counsel testified that he expected that Tommy Peterson would testify, and that he did not consider the prosecutor's statement to be harmful to Peterson, as it was the defense's position that if Tommy Peterson was traumatized, it was not due to the defendant. In any event, Peterson fails to show that the result of her trial would have been different if an objection was made. The State's opening statement is to be

> confined to what [the prosecutor] expects the evidence to prove at trial. [Cit.] If a prosecutor fails to follow that requirement, a conviction will not be reversed if the opening statement was made in good faith, and the trial court instructs the jury that opening statements are not to be considered as evidence during deliberations. [Cit.]

*Hartry v. State*, 270 Ga. 596, 599 (2) (512 SE2d 251) (1999). Peterson fails to make any showing that the prosecutor's opening statement was made in bad faith, and the jury was properly charged that the opening statements were not evidence.

(b) Also during its opening statement, the State said that Peterson and her mother "basically set up a system. Now, what it was was this boy was to be beaten all the time." The State also told the jury: "This is something [Peterson] and her mother carried out together." Peterson notes that, under OCGA § 24-3-5, the fact of a conspiracy must be shown before statements of a co-conspirator would be admissible against her, and contends that counsel should have objected to this portion of the State's opening statement because the requirements for introducing evidence of a conspiracy had not been met.[3] To the extent that Peterson questioned trial counsel at the hearing on her motion for new trial on this subject, counsel testified that he did not object to this portion of the State's opening statement because he did not believe that the evidence would support the assertion, and that he would address the matter in closing argument.[4] Further, Peterson again fails to show that the prosecutor was not exercising good faith in making his opening statement, and the jury was properly charged that the opening statements were not evidence. *Hartry*, supra. Thus, Peterson does not meet her burden to show that

---

[3] Peterson does not assert that any such statement was, in fact, introduced, and the prosecutor did not use the term "conspiracy" in his opening statement.

[4] Peterson's questioning during the hearing on the motion for new trial focused on why counsel did not object if counsel believed the State's "system" characterization to be "untrue and . . . harmful to your client."

the result of her trial would have been different if counsel had made the now-desired objection.

(c) The physician who examined Terrell at the hospital testified that he had not seen injuries to a child as bad as Terrell's before or since examining him. Peterson asserts that the witness invaded the province of the jury in determining what was child abuse, and that it was error for trial counsel to fail to object on that ground. However, during the hearing on the motion for new trial, Peterson asked no questions of trial counsel concerning this matter, and specifically informed the court that she was waiving this ground of her ineffective assistance claim.

(d) Peterson contends that during trial, counsel should have introduced testimony from Peterson's sister and brother-in-law, who lived in Miami, Florida. The witnesses were present at Peterson's sentencing hearing and counsel stated to the court what he believed their testimony would have been, which included the information that Terrell suffered beatings at the hands of his sister Tasha and brother Tommy. Counsel testified that he investigated the situation thoroughly, seriously considered calling these potential witnesses to testify, and was certain that he had a specific reason for not calling them to the stand, although he could not recall what that reason was. Peterson did not present these potential witnesses at the hearing on her motion for new trial, and they did not testify in any proceeding.

Counsel's testimony during the hearing on the motion for new trial demonstrated that not calling these witnesses was not a mere oversight, but a considered decision. "There is a strong presumption that counsel's actions are the result of sound trial strategy, and those actions are judged from counsel's perspective at the time of trial. [Cit.] The decision regarding which witnesses to present is a matter of trial strategy, [cit.]. . . ." *Brown v. State*, 278 Ga. 724, 731 (9) (609 SE2d 312) (2004). "In the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are afforded wide discretion. [Cit.]" *Simpson v. State*, 277 Ga. 356, 359 (4) (c) (589 SE2d 90) (2003). "[I]n the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic. [Cit.]" *Stokes v. State*, 281 Ga. 825, 835 (8) (h) (642 SE2d 82) (2007). It was Peterson's burden to overcome the presumption that counsel's decisions were the exercise of sound trial strategy if she was to prevail in her motion for new trial. Relying upon the record of a different proceeding, convened for a different purpose, and which record itself contained only a summary of what counsel believed the relevant testimony would be, does not meet that burden. See *Hunt v. State*, 278 Ga. 479, 480-481 (4) (604 SE2d 144) (2004); *Prince v. State*, 277 Ga. 230, 234 (3) (587 SE2d 637) (2003).

Further, even if failing to call these potential witnesses was considered deficient performance on counsel's part, Peterson fails to demonstrate that the result of her trial would have been different if the potential witnesses had testified. Assuming that their testimony would have been as claimed at the sentencing hearing and could be used to establish prejudice, see *Dickens v. State*, 280 Ga. 320, 322-323 (2) (627 SE2d 587) (2006), there is no reasonable likelihood that the jury would have ascribed the litany of abuse leading to Terrell's death to his then eleven-year-old sister and six-year-old brother. See *Head v. Carr*, 273 Ga. 613, 622 (4) (c) (2) (544 SE2d 409) (2001).

(e) Peterson also contends that counsel should have introduced the testimony of Peterson's mother and co-indictee, Pharina Peterson. Counsel testified at the hearing on the motion for new trial that he interviewed Pharina Peterson several times, and found her demeanor such that he doubted she would be found credible. After the jury trial, counsel met with her again, when she was not under the influence of medication, and found her to be more articulate, and was willing to present her testimony at the sentencing hearing.[5] Peterson has not demonstrated that counsel's decision not to call Pharina Peterson to testify was not the exercise of reasonable trial strategy. *Simpson*, supra.[6]

(f) One of the State's witnesses at trial was a psychotherapist who interviewed Tasha and Tommy Peterson the day after Terrell's death. The State asked the psychotherapist if Tasha's recounting of certain events to her was "consistent with a child who had, in fact, witnessed these types of events?" The witness responded that it was, and that she believed that Tasha had provided her with accurate information. Peterson's trial counsel objected, the court sustained the objection, and instructed the jury that it alone was to decide the accuracy and truthfulness of Tasha's version of events.

Nonetheless, Peterson contends that counsel was ineffective in not making an objection sooner. Counsel's objection was sustained, the court instructed the jury on its role in treating the testimony of witnesses and deciding the facts of the case, both at the time of the objection and in final instructions, and Peterson fails to show that there is a reasonable likelihood that the result of her trial would have been different if counsel had objected sooner. See *Moore v. State*, 278 Ga. 397, 399-400 (2) (a) (603 SE2d 228) (2004).

---

[5] Peterson's sentencing hearing was 45 days after her adjudication of guilt.

[6] Peterson also asserts that counsel should have called an unidentified witness who worked for the Department of Human Resources to testify, but did not ask counsel any questions concerning the decision not to call any such person to testify, and fails to establish ineffective assistance of counsel on this ground. See *White v. State*, 281 Ga. 276, 281-282 (6) (637 SE2d 645) (2006).

(g) During closing arguments, the State referred to the treatment of Terrell as "torture." Counsel testified at the hearing on the motion for new trial that he did not object because he believed that the State was merely drawing a reasonable inference from the evidence. See *Harris*, supra; *Simmons*, supra. Peterson fails to establish ineffective assistance of counsel on this ground. *Smith v. State*, 279 Ga. 48, 50 (2) (610 SE2d 26) (2005); *Huff v. State*, 274 Ga. 110, 113 (3) (549 SE2d 370) (2001).

(h) Finally, Peterson urges that counsel should have presented evidence of her own childhood, during which she suffered abuse at the hands of her mother, Pharina Peterson, arguing that such evidence would show that Peterson did not report Pharina's abuse of Terrell because she did not have any proper moral reference on such matters. Counsel testified that he did not present such evidence because the defense was that Peterson did not participate in any abuse of Terrell, or condone it, and that the argument that Peterson now advances was not relevant to that defense. Peterson fails to show that this decision was anything other than the exercise of reasonable strategy, and fails to establish ineffective assistance of trial counsel. *Simpson*, supra.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 13, 2007.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

[7] Peterson also enumerates as error that trial counsel did not object to "the prosecutor leading the witness and establishing her credibility," but the enumeration is not supported by argument or authority and is deemed abandoned. Supreme Court Rule 22.