### A08A0873. BUBRICK v. THE STATE.
(667 SE2d 666)

PHIPPS, Judge.

Chad Michael Bubrick was convicted of committing burglary, with the intent to commit arson, at the home of his ex-wife;[1] aggravated stalking of her;[2] obstructing two law enforcement officers;[3] and hindering a third law enforcement officer.[4] On appeal, he contends that the evidence was insufficient to sustain his burglary conviction, that his character was impermissibly injected in evidence, and that his trial counsel was ineffective. Because Bubrick has shown no reversible error, we affirm.

The state's evidence showed the following.[5] On November 22, 2005, Bubrick went into his ex-wife's house without her consent. She called 911, and he left. Bubrick telephoned his ex-wife while the responding police officer was at the scene. The officer advised Bubrick that his ex-wife did not want him there and that, if he returned, he would be arrested for criminal trespass.

A few nights later, on November 24, 2005, Bubrick's ex-wife saw Bubrick in her back yard and went outside to demand that he leave. When he refused, she went inside and called 911. He followed her. Bubrick's ex-wife complained to the responding law enforcement officer that Bubrick was there in violation of a restraining order she had obtained against him. The officer asked Bubrick to place his hands against a wall, but Bubrick replied that he was not going to jail. When the officer grabbed Bubrick's hands, he wrangled free of the officer's grasp, pushed the officer away from him, maneuvered into a fighting stance, and retorted to the officer's warning of being shot by a Taser gun with, "Shoot me." After being so shot, Bubrick ran from the scene.

Within hours, at about 2:00 a.m. on November 25, Bubrick's ex-wife again called 911 because of the sound of a basement window breaking. Two uniformed police officers arrived within five minutes to find Bubrick lying face-down in a basement room between a bed and a wall with a window. Bubrick ignored the officers' several

---

[1] See OCGA § 16-7-1 (defining burglary).

[2] See OCGA § 16-5-91 (a) (defining aggravated stalking).

[3] See OCGA § 16-10-24 (b) (defining felony obstruction).

[4] See OCGA § 16-10-24 (a) (defining misdemeanor hindering).

[5] Bubrick neither testified nor called any witness.

commands to put his hands behind his back. After he stood, his ex-wife saw that he was holding a container of charcoal lighter fluid and several lighters. Bubrick refused to comply with police commands to lie across the bed with his hands outstretched. He yelled repeatedly that he was not going to jail and then charged toward one of the officers. The other officer shot Bubrick with a Taser gun. Bubrick tried to flee, but was caught by one of the officers. Bubrick screamed that he was not going to jail and struggled to free himself from the officer, despite the officer's orders for him to cease fighting. The other officer assisted in the physical struggle to gain control of Bubrick, and although Bubrick was pepper-sprayed and again shot by a Taser gun, he continued to struggle with the officers against their restraint. Bubrick disregarded the officers' commands to cease fighting and lie on the floor, and he continued to yell that he was not going to jail. The officers eventually subdued Bubrick to the extent that he could be handcuffed by a third uniformed law enforcement officer who had arrived as backup. Placed in a patrol car back seat, Bubrick continued to kick the vehicle's doors and windows, notwithstanding police commands to cease doing so.

During the scuffle with Bubrick, the officers discovered in Bubrick's jacket pocket a screwdriver and a container of charcoal lighter fluid. After the scuffle, a second container of charcoal lighter fluid was found on the bedroom floor where Bubrick initially had been discovered. On the night in question, Bubrick's ex-wife did not own any charcoal lighter fluid and did not store lighters in that part of the house.

1. Bubrick challenges his burglary conviction, arguing that there was insufficient evidence that he intended to commit arson inside his ex-wife's residence.

> The standard of review for sufficiency of the evidence is set out in *Jackson v. Virginia*.[6] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[7]

---

[6] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[7] *Davis v. State*, 270 Ga. App. 777 (1) (607 SE2d 924) (2004) (citation omitted).

Bubrick misplaces reliance upon *State v. Bryant*.[8] In that case, the state contested the grant of the defendant's motion for directed verdict on a burglary charge.[9] We did not consider the merits of the state's evidentiary challenge, but dismissed the appeal, explaining, "The government cannot appeal such a directed verdict of acquittal, even if it is erroneously granted."[10] Here, no grant of a motion for directed verdict is being contested by the state. And the evidence showed that Bubrick broke into his ex-wife's residence at about 2:00 a.m., bringing with him containers of flammable liquid and several lighters. Although, as Bubrick points out, no fire was started, any rational trier of fact could have found beyond a reasonable doubt that Bubrick intended to commit therein the felony of arson.[11]

2. Bubrick's contention that the state improperly injected his character in evidence was waived by his trial lawyer's failure to object.[12]

3. Bubrick contends that his trial lawyer's failure to object to improper character evidence amounted to ineffective assistance of counsel. Specifically, Bubrick complains that two of the state's witnesses — a law enforcement officer and Bubrick's ex-wife — made references before the jury that he had been in jail.

To prevail on a claim of ineffective assistance of counsel,

> a defendant must establish, pursuant to *Strickland v. Washington*,[13] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[14]

We need not address both components of the *Strickland* test if the showing on one is insufficient; nor must we address the components in any particular order.[15]

(a) While the first two officers who responded to the 2:00 a.m. emergency call testified that Bubrick adamantly proclaimed

---

[8] 182 Ga. App. 698 (356 SE2d 656) (1987).

[9] Id. at 698-699.

[10] Id. at 699 (citations omitted).

[11] See *Waller v. State*, 267 Ga. App. 608, 609 (600 SE2d 706) (2004) (determining that the act of pouring gasoline on kitchen floor authorized a finding of the intent to commit arson).

[12] See *Ford v. State*, 256 Ga. 375, 381 (6) (349 SE2d 361) (1986).

[13] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[14] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[15] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

throughout their encounter that he was not going to jail, the third officer who later arrived as backup twice testified that he heard Bubrick scream, "I'm not going back to jail." "Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character at issue."[16] Here, the words Bubrick repeatedly screamed as he refused to comply with the officers' commands and resisted restraint by them demonstrated his intent to commit the counts of obstruction and hindering underlying this case. Evidence of Bubrick's utterances, therefore, was not rendered inadmissible merely because it incidentally put his character at issue,[17] and his trial lawyer's performance was not deficient for not objecting to this officer's recollection of what Bubrick said at the crime scene.[18]

(b) Bubrick's ex-wife was asked by the prosecutor about her and Bubrick's living arrangements after their divorce. She answered that she moved to her parents' home, while Bubrick remained at the apartment they had shared when married. She continued, "And when he was arrested, of course, he didn't have any place. When he got out he was [at a different residence]." On cross-examination, Bubrick's ex-wife was asked whether Bubrick had visited her residence after their divorce. She answered that, aside from those occasions in which Bubrick would just "show up" and she would call the police, he came to her residence every other weekend to pick up their child for scheduled visitation. She continued, "After he got out the judge say just visitations every Saturday [at] a public place, McDonald's or where she can play, and just for two hours." On re-direct, Bubrick's ex-wife was asked, "What does McDonald's have to do with the child and visitation?" She answered, ". . . he went to jail, so he got out and just [had] supervised visitations." Pretermitting whether trial counsel committed professional error by failing to object to the challenged testimony, having examined the entirety of the trial transcript, we find no reasonable probability that, but for trial counsel's failure to object to the cited references, the outcome of Bubrick's trial would have been different.[19]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 9, 2008 — 

---

[16] *Jones v. State*, 280 Ga. 205, 206-207 (2) (a) (625 SE2d 1) (2005) (citation and punctuation omitted).

[17] See *Richie v. State*, 258 Ga. 361, 362 (3) (369 SE2d 740) (1988).

[18] See *Castillo v. State*, 281 Ga. 579, 584-585 (7) (a) (642 SE2d 8) (2007).

[19] See *Strickland*, supra; see generally *Isaac v. State*, 269 Ga. 875, 877-878 (5) (505 SE2d 480) (1998) (determining that testimony that defendant had been in jail and had a probation officer constituted passing references that did not place defendant's character in evidence).

*Little & Crumly, Samuel F. Little, Jr.,* for appellant.
*T. Joseph Campbell, District Attorney, Richard A. Hull, Assistant District Attorney, Jenkins & Olson, Erik J. Pirozzi,* for appellee.