304 Ga. 733
FINAL COPY

S18A1153.  HENDERSON v. THE STATE.

HUNSTEIN, Justice.

Appellant Frank Henderson was convicted of felony murder and related offenses in connection with the beating death of Monica Davis.[1]  On appeal,

---

[1] In July 2007, a Fulton County grand jury returned an indictment charging Appellant and co-defendant Tiffany Turner with malice murder, felony murder predicated on aggravated assault, and two counts of aggravated assault; Appellant was also charged with influencing a witness, namely, co-defendant Turner.  Turner pled guilty to voluntary manslaughter and aggravated assault.  Following a trial conducted August 13-20, 2007, a jury found Appellant guilty of felony murder, one count of aggravated assault, and influencing a witness; he was acquitted of the remaining charges.  The trial court sentenced Appellant to life imprisonment for felony murder and to five years' imprisonment for influencing a witness, which was to run concurrent with the life sentence; the remaining count was merged with the felony murder count.

Appellant timely filed a motion for new trial on September 6, 2007, which was amended on June 20, 2014.  Following a hearing, the trial court denied the amended motion on September 6, 2017.  See Owens v. State, 303 Ga. 254 (811 SE2d 420) (2018) (reminding the bench and bar that "[w]e do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial" (Citation and punctuation omitted.)).  Appellant filed a timely notice of appeal; this case was originally docketed in the Court of Appeals, but it was transferred to this Court.  This appeal was docketed to the August 2018 term of this Court, and oral argument was heard on September 11, 2018.

Appellant contends that this Court should grant him a new trial, that trial counsel was ineffective, and that the trial court erred in admitting certain testimony. Finding no error, we affirm.

Reviewing the record in a light most favorable to the verdicts, the evidence adduced at trial established as follows. In September 2004, Davis and her longtime friend, Phyllis Ann Thompson, were parked at a gas station in Fulton County. The pair, both "renegade prostitutes,"[2] were there so that Davis could meet her boyfriend, Darryl Daniels. While the women waited, Appellant, a pimp known to operate in the area, repeatedly drove by very slowly with a menacing expression on his face; also in the vehicle were Tiffany Turner and a number of other prostitutes who worked for Appellant.

At some point, Appellant's vehicle stopped in the parking lot, and Appellant went to speak with Thompson. Davis, however, reciprocated Appellant's threatening glares; consequently, Appellant indicated to Turner that she should start an altercation with Davis. Turner exited Appellant's vehicle and threw a pink stiletto-heel shoe at Davis, hitting her. Davis exited her

---

[2] The trial testimony reflects that a "renegade" is a prostitute who works without the assistance of a pimp, often angering local pimps who wish to control certain territories.

2

vehicle and ended up in a physical altercation with Turner and two other prostitutes who worked for Appellant; numerous witnesses testified that Appellant repeatedly yelled at the women in his employ to "get" or "kill" Davis. The fight eventually subsided, but Appellant gave Turner a second signal and again told her to "get" Davis; a witness walking by the scene testified that she heard Appellant tell Turner to "get in the car and hit" Davis. Turner testified that, following Appellant's instructions, she got behind the wheel of the vehicle and drove toward Davis, hitting her and running her over a number of times. Appellant and his entourage fled the scene in the vehicle, and Davis later died as a result of the blunt-force trauma.

Turner was eventually taken to the police precinct by Appellant's mother, Diadra Nelson, who had rented the vehicle in question. While Turner was waiting to speak with an investigator, Appellant contacted Turner through his mother and instructed Turner to inform investigators that he was at a different location at the time of the incident. When investigators later connected Appellant to the incident and arrested him, Appellant exclaimed that Turner was supposed to take full responsibility for the incident and that Thompson did not like him. While in pre-trial custody, Appellant sent numerous letters to Turner

3

asking her for loyalty, telling her to recant her statements to police, and instructing her to tell investigators that he was not involved with the murder.

1. Though not raised by Appellant as error, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence, as stated above, was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant first asks this Court to grant him a new trial as a matter of law pursuant to OCGA §§ 5-5-20 and 5-5-21. However, as we have explained before, we have no authority to grant such a request.

> A motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Witt v. State, 157 Ga. App. 564 (2) (278 SE2d 145) (1981). Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials. Willis v. State, 263 Ga. 597 (1) (436 SE2d 204) (1993).

Smith v. State, 292 Ga. 316, 317 (737 SE2d 677) (2013).[3] Instead, as we did

---

[3] Appellant moved the trial court for a new trial on these grounds, and his motion was denied by written order. Appellant does not challenge the trial court's

above, "this Court considers only the sufficiency of the evidence that was considered by the jurors in arriving at the verdict." Smith v. State, 300 Ga. 532, 534, n.2 (796 SE2d 671) (2017).

3. Appellant next contends that his trial counsel was ineffective in seven different ways. To succeed on his claims, Appellant bears the heavy burden of showing "both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable." Slaton v. State, 303 Ga. 651, 652 (814 SE2d 344) (2018). See also Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

> To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other.

---

ruling on his motion.

(Citation and punctuation omitted.) Slaton, 303 Ga. at 652-653. We address each of Appellant's claims in turn.

(a) Appellant first contends that trial counsel was ineffective for failing to investigate and present testimony from two exculpatory witnesses, Lakiesha Gray and Shaqunia Gates. According to Appellant, these witnesses would have testified that he "was not a party to nor present during the alleged killing." As an initial matter, Appellant has failed to adduce any competent evidence to show what Gray would have testified to at trial; accordingly, this portion of his claim must fail. See Dickens v. State, 280 Ga. 320 (2) (627 SE2d 587) (2006).

Regarding Gates, the undisputed testimony at the hearing on the motion for new trial was that trial counsel did, in fact, interview her. Both Gates and Appellant testified that trial counsel met with Gates; trial counsel acknowledged that he discussed possible witnesses with Appellant and interviewed at least one female passenger from Appellant's vehicle, though he could not recall whether it was Gates specifically. According to her testimony at the hearing on the motion for new trial, Gates — a prostitute who worked for Appellant and was romantically involved with him — would have testified at trial that, on the night

6

in question, Appellant argued with the victim in the gas station parking lot and that, shortly thereafter, a brawl took place between the victim and a number of prostitutes who worked for Appellant; according to Gates, however, the enmity was solely between the women and did not involve Appellant. Gates would also have testified that, at the time of the incident, Appellant was in an adjacent parking lot and had neither encouraged nor signaled Turner to kill Davis.

As a preliminary matter, though Appellant elicited extensive testimony that trial counsel interviewed witnesses and met with Gates, trial counsel was never asked about Gates' testimony nor why he did not call Gates as a witness. As such, Appellant has not overcome the strong presumption that trial counsel's decision fell within the broad range of reasonable professional conduct. See Peterson v. State, 282 Ga. 286 (4) (d) (647 SE2d 592) (2007) ("'In the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are afforded wide discretion.'" (Citations omitted.)).

Moreover, even if we assume that trial counsel's performance was objectively unreasonable, Appellant has failed to demonstrate prejudice. Gates' testimony largely corroborates the accounts provided by other witnesses — i.e.,

that Appellant was present on the night of the murder, that there was an argument between Appellant and the victim in the parking lot, that a number of prostitutes who worked for Appellant ended up in a physical altercation with the victim, and that Turner eventually rammed the victim with the vehicle. The gravamen of Gates' testimony is that Appellant did not tell or signal Turner to *kill* the victim; her underdeveloped testimony does not, however, clearly counter the extensive witness testimony that Appellant was otherwise encouraging the women to fight and "get" Davis. Based on the foregoing — as well as the overwhelming testimony that Appellant had encouraged Turner and the other women to "fight" and "get" the victim — we cannot say that but for trial counsel's failure to call Gates as a witness there is a reasonable probability that the outcome of his trial would have been more favorable.

(b) Appellant next faults trial counsel for failing to object during opening statements when the State read from the indictment. Notably, the record reflects that trial counsel requested a bench conference as soon as the State began reading from the indictment; though the bench conference was not transcribed, counsel testified at the hearing on the motion for new trial that he believed he objected during that bench conference. Accordingly, it is not at all clear that

8

trial counsel did not object to the State's opening statement, and, even if he did not, Appellant cites no authority for the proposition that the prosecutor cannot read from the indictment in explaining the case and charges.

Nevertheless, even presuming deficient performance, there is no prejudice. While the State read the indictment during its opening statement, the trial court had *already* read the indictment to the jury, the jury was instructed by the trial court that neither the indictment nor the State's argument was evidence in the case, and the trial court later read the indictment to the jury again at the close of trial. As such, the language and significance of the indictment (as well as the import of the State's opening statement) was well known to the jury, and Appellant cannot demonstrate that, had trial counsel objected to the State's opening statement, there is a reasonable probability the outcome of trial would have been more favorable. Cf. Parker v. State, 277 Ga. 439 (2) (588 SE2d 683) (2003) (even where counsel objects, uncorrected argument of prosecutor does not require reversal where it is highly probable the improper argument did not contribute to judgment).

(c) The State's first witness, Officer James Kettel, testified without objection that he was told by a witness on the scene that the victim had been in

9

a physical altercation with another female prostitute and that, shortly thereafter, Appellant got into his vehicle and drove into the victim. Appellant contends that trial counsel performed deficiently by failing to object to this hearsay testimony. Trial counsel testified during the hearing on the motion for new trial that, though he was unsure why he did not object, it was likely because the officer's testimony was inconsequential in light of the overwhelming evidence that Turner was actually the driver who struck the victim. Even if we assume that trial counsel performed deficiently for failing to object, Appellant cannot demonstrate prejudice.

The transcript reflects that there was indeed extensive testimony from numerous other witnesses that it was Turner who drove into the victim. Moreover, the officer testified that it was Phyllis Ann Thompson who provided him with the statement. Thompson testified at trial for the State and was subject to extensive cross-examination; notably, trial counsel exploited the inconsistencies between Thompson's trial testimony and the statement she apparently provided to Officer Kettel. In light of the foregoing, Appellant cannot demonstrate that trial counsel's failure to object in this instance would in reasonable probability have altered the outcome of his trial.

10

(d) After the murder, Appellant secured a hotel room for Turner and the other women in his vehicle and then left them at the hotel. Later that night, Turner spoke with Diadra Nelson (Appellant's mother), and Turner testified that, when Nelson was asked about the whereabouts of her son, "she said that he was scared and that she didn't know where he was." Turner also testified that Nelson told her that she "needed to call and talk to the police." Appellant contends that trial counsel was ineffective for failing to object to these hearsay statements. Trial counsel was not asked why he did not object to these statements and, as such, Appellant has again failed to overcome the strong presumption that trial counsel's decision fell within the broad range of reasonable professional conduct. Nichols v. State, 281 Ga. 483, 486 (640 SE2d 40) (2007) ("At the hearing on the motion for new trial, Nichols never asked defense counsel to explain why he did not object. Thus, he failed to overcome the strong presumption that the inaction was a strategic decision.").

Moreover, Appellant has failed to show prejudice. Nelson herself testified that, after the incident, she could not get in touch with her son; as such, Turner's testimony was merely cumulative on this point. Further, the evidence against Appellant was strong, and he has failed to demonstrate that, had the jury been

11

prevented from hearing the hearsay testimony that he was "scared" or that Nelson directed Turner to go to the police, there is a reasonable probability that the outcome of his trial would have been more favorable.

(e) Appellant next contends that trial counsel was ineffective for failing to "contact and interview witnesses on the State's witness list prior to trial." Appellant mentions only one witness — Phyllis Ann Thompson — and alleges that trial counsel was ineffective for failing to learn that Thompson had purportedly received a threatening phone call from Appellant shortly after the murder. While the transcript indicates that trial counsel was apparently surprised when Thompson testified at trial concerning the call, the transcript also reflects that the State was not aware of the phone call until a few days before trial and that Thompson may not have reported the call to law enforcement who interviewed her on the night of the murder. Thus, it is not at all clear that trial counsel could have learned about the call by interviewing Thompson. Moreover, trial counsel thoroughly cross-examined Thompson regarding the phone call — highlighting her failure to adequately report it — and Appellant has failed to demonstrate how the outcome of his trial would have been more favorable had trial counsel learned about the call earlier or how the

manner in which trial counsel handled the call during trial prejudiced him. Accordingly, this argument is without merit.

(f)    Appellant's final two allegations of ineffectiveness — that trial counsel failed to object to improper character evidence and that trial counsel failed to challenge the voluntariness of statements made by Appellant as he was being arrested — are each a single sentence long, provide no citation to legal authority, and include no legal analysis.  As such, these arguments are deemed abandoned under Supreme Court Rule 22, and we do not address them.  See Moss v. State, 298 Ga. 613 (5) (e) (783 SE2d 652) (2016).

4.    Finally, Appellant claims that the State was permitted to adduce improper similar transaction and prior bad act evidence at trial.[4]  These bare-bones enumerations of error do not specifically identify the objectionable testimony, do not highlight if or how such alleged error was preserved, and do not include any meaningful legal analysis; instead, Appellant simply makes vague assertions of error and cites to chunks of the transcript.  "It is not this Court's job to cull the record on behalf of Appellant to find alleged errors[,]"

---

[4] We note that Appellant was tried under Georgia's old Evidence Code.

(citation and punctuation omitted). Smart v. State, 299 Ga. 414, 420 (788 SE2d 442) (2016), as appellate judges "are not like pigs, hunting for truffles buried in briefs," United States v. Dunkel, 927 F2d 955, 956 (7th Cir. 1991). Accordingly, Appellant is not entitled to a review of these claims.[5] See Burrell v. State, 301 Ga. 21 (3) (799 SE2d 181) (2017).

Judgment affirmed. All the Justices concur.

---

[5] Moreover, it appears that Appellant cannot demonstrate reversible error. From the sections of transcript cited in his brief, Appellant seems to complain that Turner was permitted to testify to specific incidents in which Appellant had physically assaulted her and to an incident in which she was forced to return to work as a prostitute even after telling Appellant that she had just been raped by one of her "customers." Without much ado, Appellant simply asserts that these statements were "illegally" admitted by the trial court. Even reading these claims in a light most favorable to Appellant, these alleged non-constitutional errors are harmless.

During her trial testimony, Turner made numerous references to Appellant's threats or use of violence against her as a mechanism for control; as such, her testimony concerning specific previous acts of physical abuse was merely cumulative of her other testimony. Likewise, in light of the considerable testimony concerning the pimp-prostitute relationship between Appellant and Turner — as well as the extensive testimony concerning Appellant's involvement in the altercation and eventual death of the victim — it is highly probable that testimony that Appellant had required Turner to return to work after she had been raped did not contribute to the jury's verdicts.

Decided December 10, 2018.

Murder. Fulton Superior Court. Before Judge Campbell.

Gerald A. Griggs, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Joshua D. Morrison, Aslean B. Zachary, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.