**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 10, 2022**

# In the Court of Appeals of Georgia

A21A1613. DEMERITTE v. THE STATE.

REESE, Judge.

Following a bench trial, Kenny Demeritte was found guilty of one count of aggravated assault and two counts of cruelty to children in the third degree.[1] The trial court subsequently denied his amended motion for new trial. Demeritte appeals, arguing that trial counsel offered ineffective assistance: (1) in his advice to Demeritte regarding the waiver of his right to a jury trial; (2) in counsel's investigation of Demeritte's case and presentation of the evidence; and (3) in allowing Demeritte's five-year-old daughter to take the stand. Demeritte also argues that these collective errors prejudiced his defense. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-5-21 (a) (2); 16-5-70 (d) (1).

Construing the evidence in favor of the trial judge's determination of the defendant's guilt,[2] the record shows the following. Demeritte and his wife, M. D., married in 2015 and had two children. M. D. testified that during their relationship there were times when Demeritte would become physically violent toward her. During one incident, Demeritte hit M. D. "in the side of [her] mouth[,]" which left her unable to "speak for days." On another occasion, Demeritte choked her, and burned her eyelid with his cigarette.

On March 22, 2018, Demeritte and M. D. were in their room with their two children when the couple began arguing. Demeritte became angry and started hitting M. D.'s face, choking her, and hitting her head against the wall. M. D. also testified that Demeritte placed a kettlebell against the door to prevent her from leaving, and said "[w]hat stops me from killing you now." Their two daughters witnessed the entire altercation.

M. D. was ultimately able to grab her oldest daughter and take her to M. D.'s car, but Demeritte held their youngest daughter. At this point, M. D. called 911. M. D. testified that when officers arrived, her "mouth and everything was bleeding[,]" but she did not seek medical attention that evening.

_____

[2] See *Turnbull v. State*, 317 Ga. App. 719, 723 (1) (723 SE2d 786) (2012).

2

On the first day of trial, Demeritte indicated that he wanted to waive his right to a jury trial. The judge advised Demeritte of his rights regarding a jury trial, answered Demeritte's subsequent questions, and allowed Demeritte and his trial counsel a recess to discuss the decision. Following the recess, Demeritte confirmed his decision to proceed with a bench trial.

The trial court found Demeritte guilty of aggravated assault and two counts of cruelty to children in the third degree. Demeritte filed a motion for new trial, which the trial court denied, and this appeal followed.

"In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo."[3] With these guiding principles in mind, we now turn to Demeritte's claims of error.

1. Demeritte argues that the trial court erred in failing to grant his motion for new trial as trial counsel provided ineffective assistance, and trial counsel's deficiencies prejudiced his defense.

---

[3] *Bubrick v. State*, 293 Ga. App. 502, 504 (3) (667 SE2d 666) (2008) (punctuation and footnote omitted).

To evaluate [Demeritte's] claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[4] which requires him to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Importantly, should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong. In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. In fact, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[5]

(a) Demeritte argues that trial counsel was ineffective in failing to sufficiently advise him regarding his choice to waive his right to a jury trial. However, at the motion for new trial hearing, trial counsel testified that he "did tell [Demeritte] it was a bad idea in so many words[,]" and counsel "challenged him on [his decision to

---

[4] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[5] *Johnson v. State*, 361 Ga. App. 43, 53-54 (4) (861 SE2d 660) (2021) (punctuation and additional footnotes omitted).

waive a jury trial] and questioned why he wanted to do that[.]" However, "[Demeritte] was adamant about having a bench trial." "Whether to waive a jury trial is a strategic decision to be made by an accused after consultation with counsel."[6] Thus, as Demeritte made the decision to waive his right to a jury trial after trial counsel offered his advice, the court did not err in concluding trial counsel was not deficient.[7]

(b) Demeritte argues that trial counsel was ineffective in his investigation of the case and in his presentation of the evidence in several respects.

First, he asserts that trial counsel should have called two of Demeritte's family members who were in the house the day of the incident to testify that they did not hear anything indicating a physical altercation from the couple's room. However, trial counsel testified that he chose not to call these witnesses because his understanding was that they did not see anything regarding the altercation, and therefore could not add anything additional to Demeritte's defense. As the Supreme Court of Georgia has held, "[i]n the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are

---

[6] *Hendrix v. State*, 284 Ga. 420, 421 (2) (667 SE2d 597) (2008) (punctuation and footnote omitted).

[7] See *Wroge v. State*, 278 Ga. App. 753, 755 (2) (629 SE2d 596) (2006).

5

afforded wide discretion."[8] In light of this discretion, the trial court did not err as Demeritte failed to establish that trial counsel's actions "so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[9]

Second, Demeritte argues that trial counsel was ineffective because he did not call family members and officers who saw M. D. on the day of and a few days after the altercation to testify that her injuries were not as severe as she claimed at trial. Demeritte also asserts that trial counsel should have presented employment records showing that M. D. worked three days after the incident for the same purpose. However, trial counsel testified that he already had pictures that he believed demonstrated that M. D.'s injuries were not severe, and he did not believe there was a strategic reason to present this additional evidence. Although counsel's strategy proved unsuccessful, the fact that he did not take this approach is not sufficient to "overcome the strong presumption that trial counsel's decision fell within the broad

---

[8] *Peterson v. State*, 282 Ga. 286, 292 (4) (d) 647 (SE2d 592) (2007) (citation and punctuation omitted).

[9] *Wroge*, 278 Ga. App. at 755 (2) (citation and punctuation omitted).

range of reasonable professional conduct."[10] "Moreover, even if we assume that trial counsel's performance was objectively unreasonable, [Demeritte] has failed to demonstrate prejudice[ ]"[11] as aggravated assault does not require actual bodily injury.[12] Thus, the State did not have to actually prove that M. D. sustained severe bodily injuries during the altercation.

Third, Demeritte argues that trial counsel should have presented the jail admission medical records to demonstrate that he did not have wounds consistent with striking someone. However, trial counsel testified that there was no reason to present these records as the arresting officer testified that Demeritte did not have any cuts on his hands. Thus, the choice not to present this evidence was not patently unreasonable.[13]

Fourth, Demeritte claims that trial counsel should have presented bank records showing that M. D. was able to transfer money from their account to rebut the claim

---

[10] *Henderson v. State*, 304 Ga. 733, 736 (3) (a) (822 SE2d 228) (2018).

[11] Id.

[12] OCGA § 16-5-21 (a) (2) (A person commits aggravated assault when he assaults with any "instrument which, when used offensively against a person, *is likely to* or actually does result in serious bodily injury[.]") (emphasis supplied).

[13] See *Hurston v. State*, 310 Ga. 818, 825 (3) (854 SE2d 745) (2021).

7

that Demeritte held financial control over the household and challenge her testimony that she was trying to leave an abusive relationship. However, trial counsel made a strategic decision not to present these records as they did not fit his defense strategy. Such a decision was "within the wide range of reasonable professional assistance[,]"[14] as it is unclear that demonstrating M. D. had some financial access to their accounts would have undercut testimony that she was trying to leave an abusive relationship.

Finally, Demeritte asserts that trial counsel should have obtained the transcript from M. D.'s Temporary Protective Order ("TPO") hearing that contained statements which were inconsistent with what she told law enforcement on the night of the incident. However, trial counsel was able to impeach M. D. at trial with the TPO application she completed, which did not reference Demeritte hitting her head against the wall. Therefore, as the application accomplished the same purpose, even assuming arguendo that not presenting the TPO transcript was deficient, Demeritte failed to show "he was prejudiced by the performance of his lawyer" as he did not prove there

---

[14] *Keener v. State*, 301 Ga. 848, 850 (2) (804 SE2d 383) (2017) (citations and punctuation omitted).

8

was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15]

(c) Demeritte argues that trial counsel was ineffective as he allowed Demeritte's daughter to take the stand. Specifically, he asserts that if trial counsel had stipulated to her testimony, he may have received a lesser sentence as the State and the trial court at the sentencing hearing both referenced the fact she was put on the stand during the trial. However, trial counsel testified that he made the decision based on his belief that Demeritte's daughter would not be present at trial, which was due to his client's insistence that his daughter would not be brought to court. Thus, not stipulating to her testimony in the belief that she would likely not appear at court was a strategic decision. Although this proved unsuccessful,

> [a]s a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. In other words, hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim.[16]

---

[15] *Keener,* 301 Ga. at 850 (2) (citation and punctuation omitted).

[16] *Williams v. State*, 358 Ga. App. 152, 155 (a) (853 SE2d 383) (2021) (citation and punctuation omitted).

(d) Demeritte asserts that collectively trial counsel's deficiencies prejudiced his defense and justified a new trial. "Although we may now consider whether the cumulative effect of errors requires a new trial, where, as here there are not multiple errors, there can be no cumulative error."[17]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[17] *Williams*, 358 Ga. App. at 157 (c).