**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2164. LEGGETT v. THE STATE.

MCFADDEN, Judge.

A jury found Jasper Leggett, Jr., guilty of child molestation and burglary. The trial court denied Leggett's motion for a new trial. Leggett appeals, claiming that there was insufficient evidence, that the trial court failed to exercise its discretion in considering the general grounds, that the trial court erroneously admitted hearsay, that the trial court allowed improper bolstering testimony, and that his trial counsel was ineffective. However, there was sufficient evidence from which the jury could find guilt beyond a reasonable doubt, there is nothing in the record showing that the trial court failed to exercise its discretion and weigh the evidence, Leggett has failed to show improper admission of hearsay or has waived such objection, the testimony in

question was not bolstering, and Leggett has not shown that trial counsel's performance was deficient and prejudicial. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence "is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This [c]ourt does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013) (citations omitted).

Viewed in that light, the evidence showed that near 5:00 a.m. on September 12, 2010, Leggett entered the house of the victims. He went into the bedroom where 11-year-old D. L. was sleeping with her sister and a friend who had spent the night at their house. Leggett sat on the edge of the bed, reached inside D. L.'s shorts, and touched her vagina and buttocks. D. L. was awakened by the touching, and Leggett put a finger to his lips, indicating that she should be quiet. He continued to touch her, and then left the bedroom.

2

Leggett went into the living room where D. L.'s mother was sleeping on a couch. The mother woke up to find Leggett lying on the floor right next to her, staring at her face. The mother, who did not know Leggett, jumped up and asked him what he was doing there and how he had gotten into the house. Leggett identified himself as "G from across the street," and said that he had "just [come] in," that he had come to see her, and that if it was a problem for him to be there he would leave.

In the meantime, D. L. woke up her sister, 15-year-old I. S., and told her what had happened. I. S. ran into the living room and told the mother that the man had touched D. L. The mother immediately went to the phone to call the police, and Leggett then left the house. The mother informed the police that the intruder had identified himself as G and that he had been wearing a white shirt and black pants.

At approximately eight o'clock that same morning, D. L. and her sister talked to a neighbor about what had happened. The neighbor, who is related to Leggett, confirmed that Leggett is known as G and helped the mother find Leggett in an apartment across the street from their house. As the mother confronted Leggett about the incident, he fled. The mother and the neighbor chased after Leggett and called the police. Officers responded to the call and arrested Leggett, who was wearing a white

3

shirt and black shorts. The mother and D. L. identified Leggett as the man who had intruded into their house.

Leggett's mother testified for the defense, stating that Leggett was in her house at the time of the incident. She testified that she had gotten up at five o'clock on the morning in question to get some water. She looked in a bedroom and saw Leggett lying in the bed.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational "trier of fact could [have found] beyond a reasonable doubt that [Leggett] committed the offenses of . . . child molestation . . . and burglary[.]" *Couch v. State*, 326 Ga. App. 207, 208 (1) (756 SE2d 291) (2014) (citations omitted).

2. *General grounds.*

Leggett requests that we remand the case to the trial court with direction that it exercise its discretion and weigh the evidence, arguing that the trial court erroneously failed to do so even though Leggett had raised the general grounds in his motion for new trial by asserting that the verdict was strongly against the weight of the evidence and contrary to the law and principles of justice and equity. Indeed, "[w]hen faced with a motion for new trial based on these general grounds, the trial court has the duty to exercise its discretion and weigh the evidence. [Cits.]" *Walker*

4

*v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). And if the record reflects that the trial court failed to exercise such discretion, we will vacate and remand for the trial court to fulfill this obligation. *Copeland v. State*, 325 Ga. App. 668, 672 (3) (754 SE2d 636) (2014).

> However, in interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order indicates to the contrary and that the trial judge agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact.

*Conley v. State*, 329 Ga. App. 96, 100 (2) (763 SE2d 881) (2014) (citation omitted).

Here, Leggett does not point to anything in the order denying a new trial or any other part of the record which shows that the trial court failed to exercise its discretion and weigh the evidence. On the contrary, at the motion for new trial hearing, after Leggett had argued the general grounds and asked the court to exercise its broad discretion to grant a new trial, the trial judge expressly indicated that he would not issue a ruling on the motion until he had "a chance to look at the transcript." Several days later, the trial court entered its order denying the motion, noting that it had "heard the evidence and argument of counsel." While the order did

5

not specifically state the standard of review, it also contained nothing to indicate the use of an incorrect standard or that the trial judge failed to exercise his discretion and weigh the evidence.

"This [c]ourt will not presume the trial court committed error where that fact does not affirmatively appear. [Cits.]" *Conley*, supra at 101 (2) (punctuation omitted). Because it does not affirmatively appear from the record that the trial court failed to exercise its discretion in denying the motion for new trial, we will not presume error and instead must presume that the trial court exercised its discretion and properly weighed the evidence. *Copeland*, supra at 672 (3). Compare *White v. State*, 293 Ga. 523, 525-526 (2) (753 SE2d 115) (2013).

3. *Hearsay.*

Leggett argues that the trial court erred in allowing hearsay testimony from I. S. and from the investigator who conducted the forensic interview of D. L. The arguments are without merit.

a. *Testimony of I. S.*

At trial, I. S. was asked why she had run into the living room, and she responded, "Because [D. L.] said that he had touched her, and then I was like, well, I'm fixing to go in there, so I went in there cause I had heard talking, mom and him

6

was talking, and I went in there and I said, kill him, and my mama said why, and . . ."

Leggett then raised a hearsay objection, which the trial court overruled. It appears from the transcript and Leggett's brief that the hearsay objection pertained to I. S.'s statement that D. L. had "said that he had touched her." However,

> [t]he Child Hearsay Statute as set out in former OCGA § 24-3-16 provides that the out-of-court statement of a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[1]

*Wofford v. State*, 329 Ga. App. 195, 204 (5) (a) (764 SE2d 437) (2014) (footnote omitted).

Here, D. L. was under 14 years old and was available to testify at trial. In fact, she took the stand before I. S. did, and had already testified that she had told I. S. about the man touching her. The circumstances of the statement, made immediately after the incident as an outcry to her sister, indicate sufficient reliability. See *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991). Accordingly, I. S.'s testimony about D. L.'s outcry was admissible under the child hearsay statute.

---

[1] The former child hearsay statute applies to this case because the trial took place in 2011. The law governing child hearsay is now codified at OCGA § 24-8-820.

Moreover, even if the testimony had been inadmissible hearsay, it was merely "cumulative of the victim's own testimony and was not harmful. [Cit.]" *Wright v. State*, 327 Ga. App. 658, 662 (2) (c) (760 SE2d 661) (2014).

We note that Leggett has also cited subsequent testimony by I. S. as also containing inadmissible hearsay statements. However, Leggett "failed to object to the admission of [this] testimony regarding these statements and therefore he has waived this issue." *Jones v. State*, 329 Ga. App. 478, 481 (3) (765 SE2d 657) (2014) (footnote omitted).

b. *Testimony of the forensic interviewer.*

Leggett contends that although some of the forensic interviewer's testimony was admissible under the child hearsay statute, other parts of her testimony contained inadmissible hearsay. But as he acknowledges in his brief, while he raised a bolstering objection to some of the testimony, he did not raise a hearsay objection to the forensic interviewer's testimony. "To preserve an objection as to a specific point, 'the objection must be on that specific ground' in order for this [c]ourt to consider it. [Cit.]" *Jones*, supra at 481 (3) n. 3. Because Leggett failed to raise a hearsay objection at trial, he has "waived this issue." *Phillips v. State*, 284 Ga. App. 224, 229 (1) (d) (644 SE2d 153) (2007) (citation omitted).

8

4. *Bolstering.*

Leggett claims that the forensic interviewer improperly bolstered the testimony of D. L. But he has failed to make any showing of bolstering.

"It is well established that in no circumstance may a witness' credibility be bolstered by the opinion of another . . . as to whether the witness is telling the truth." *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995) (citation and punctuation omitted). Thus, "[t]estimony that another witness believes the victim impermissibly bolsters the credibility of the victim." *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999) (citation omitted).

Here, Leggett has not cited a single instance where the forensic interviewer testified that she believed D. L. or opined that D. L. was telling the truth. Thus, there was no impermissible bolstering. See *Morris v. State*, 268 Ga. App. 325, 328 (2) (601 SE2d 804) (2004). Rather, the forensic interviewer's testimony which Leggett challenges merely recounted the interview with D. L. and the child's statements about the incident. Testimony concerning the victim's "forensic interview describing the events surrounding the crime was admissible as substantive evidence under the Child Hearsay Statute." *Obeginski v. State*, 313 Ga. App. 567, 570 (2) (722 SE2d 162) (2012) (citations omitted).

Leggett has also pointed to two statements made by the forensic interviewer in response to cross-examination questions posed by his trial counsel. Leggett's attorney asked the witness if the victim had said she thought she was dreaming at one point, and the witness answered, "Initially, she though she was, and then when she woke up, she realized he was actually there in the bedroom." Counsel then followed up by asking if the interviewer "got the impression or sense from her that some part of this was foggy or unclear," and the witness responded, "I got the sense from her that she was woke up by somebody touching her."

Again, these are merely examples of the forensic interviewer testifying as to what the victim told her. They are not instances of the witness testifying that she believed the victim was telling the truth, and thus the testimony does not amount to improper bolstering. Moreover, even if the testimony were improper, any error was self-induced. Leggett "elicited this testimony during cross-examination of the [witness] and failed to object to [her] response[s]. Matters not objected to at trial cannot be raised for the first time on appeal. Likewise, self-induced error cannot be complained of on appeal." *Shelnutt v. State*, 234 Ga. App. 655, 657 (4) (506 SE2d 643) (1998) (citations and punctuation omitted).

5. *Ineffective assistance of counsel.*

Leggett claims his trial counsel was ineffective in failing to object to certain testimony and in failing to present two exculpatory witnesses. To prevail on such claims, Leggett must "show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation and punctuation omitted). Leggett has failed to make both showings.

a. *Testimony of I. S.*

Leggett complains that his trial counsel was ineffective in failing to object to the testimony from I. S. discussed above in Division 3 (a) as improperly bolstering the testimony of D. L. However, as with the testimony of the forensic interviewer, this testimony from I. S. did not amount to improper bolstering because she neither testified that she believed the victim nor opined that the victim was being truthful. See *Morris v. State*, supra. Rather, I. S.'s testimony simply explained what happened when she ran into the living room after D. L.'s outcry. Thus, a bolstering objection would have been without merit, and "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

11

b. *Testimony of the forensic interviewer.*

Leggett contends that his trial counsel should have raised a hearsay objection to the forensic interviewer's testimony that D. L. had told her about I. S. "telling [their] mother that they ought to kill him for what he had done, but at that point the mother did not know what she was talking about." However, even if we assume, without deciding, that counsel was deficient for failing to raise a hearsay objection, Leggett has not shown that there is a reasonable probability that the outcome of the trial likely would have been different but for that alleged deficiency because the testimony was merely cumulative of testimony previously given by I. S. about that same statement that she had made to her mother. See *Kirkland v. State*, 292 Ga. App. 73, 76 (3) (b) (663 SE2d 408) (2008) (no ineffective assistance of counsel where erroneous admission of hearsay is cumulative of legally admissible evidence of the same fact). Accordingly, Leggett's "claim of ineffective assistance of counsel on this basis fails." *Hill v. State*, 290 Ga. App. 140, 146 (5) (f) (658 SE2d 863) (2008) (citation omitted).

c. *Testimony of A. P.*

Leggett argues that his trial counsel should have raised a hearsay objection to testimony given by 10-year-old A. P., the friend who had spent the night at the

victim's house. At the motion for new trial hearing, counsel testified that he did not object to the testimony because he did not want to appear to the jury as though he was unnecessarily attacking or being "pointlessly argumentative" with a young child. He explained that "you don't want to give the jury the impression that you're the bad guy, you're attacking a child, you're being pointlessly petty over legal things when it's just a child trying to explain what she saw."

"We do not find this strategy unreasonable, and we therefore find no deficient performance on the part of trial counsel in this respect. [Cits.]" *Jessie v. State*, 294 Ga. 375, 378 (2) (c) (754 SE2d 46) (2014). See also *Kilpatrick v. State*, 276 Ga. 151, 153 (2) (575 SE2d 478) (2003) (counsel not ineffective in failing to object to certain testimony because he did not want to appear to be insensitive in front of the jury); *Thomas v. State*, 318 Ga. App. 849, 858-859 (5) (c) (734 SE2d 823) (2012) (no ineffectiveness where counsel made strategic decision not to object during child's testimony for fear of alienating jury).

d. *Exculpatory witnesses.*

Leggett claims his trial counsel was ineffective in failing to present Trabian Jones and Monica Yates as exculpatory witnesses at trial. However, neither witness provided exculpatory testimony.

Jones' testimony actually would have been harmful to Leggett because it placed him near the scene shortly before the crimes were committed around 5:00 a.m. At the motion for new trial hearing, Jones testified that the night before the incident he had been with Leggett at two clubs and that he dropped him off at approximately 4:00 a.m. at a friend's house in the same area where the victims' house was located. Upon questioning by the prosecutor, Jones expressly confirmed that he had dropped Leggett off near the scene of the crime about an hour before it happened. He also gave testimony consistent with the mother's testimony that Leggett was wearing a white shirt at the time of the crimes.

Yates' testimony at the motion for new trial hearing, while not harmful to Leggett, was also not exculpatory. She testified that she lived across the street from the victims and that at 2:00 a.m. on the date in question she saw "a group of kids that live in my area . . . [o]utside and dancing around." She did not specifically identify D. L. as one of the kids that she saw at that time, and such testimony would not have exonerated Leggett from the offenses committed at approximately five o'clock that morning.

Moreover, at the motion for new trial hearing, trial counsel testified that he was never given the names of Jones or Yates as potential defense witnesses. Under these

14

circumstances, Leggett "has failed to establish that his trial counsel provided constitutionally deficient assistance of counsel." *Gill v. State*, 295 Ga. 705, 709 (2) (763 SE2d 719) (2014). See *McIlwain v. State*, 287 Ga. 115, 118 (5) (694 SE2d 657) (2010) (attorney cannot be found deficient for failing to call a witness of whom he was not informed).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*