301 Ga. 848
FINAL COPY

S17A0974.  KEENER v. THE STATE.

HUNSTEIN, Justice.

Appellant David William Keener was convicted of felony murder and two counts of aggravated battery.[1]  On appeal, he contends that trial counsel was constitutionally ineffective and that the trial court failed to apply the correct

---

[1] In September 2014, a Hall County grand jury indicted David William Keener as follows regarding three separate physical altercations with three different victims: Count 1 – felony murder predicated on aggravated battery (Randall Huling); Count 2 – felony murder predicated on aggravated assault (Huling); Count 3 – aggravated battery (Huling); Count 4 – aggravated assault (Huling); Count 5 – aggravated battery (Ricky Blocker); Count 6 – aggravated assault (Blocker); Counts 7 and 8 – aggravated battery (Steven Yearwood); and Count 9 – aggravated assault (Yearwood).  Counts 1 through 4 were severed from Counts 7 through 9, and Counts 5 and 6 were eventually dead docketed.  Following a trial conducted July 13-17, 2015, a jury found Appellant guilty of counts seven and eight, but Appellant was acquitted on count nine.  After the second trial, conducted July 17-22, 2015, a jury found Appellant guilty on the remaining four counts.  Appellant was sentenced to life imprisonment on Count 1 and consecutive twenty-year sentences for each aggravated battery count involving Yearwood, for a total sentence of life plus 40 years; all other counts were merged or vacated.  Appellant filed a motion for new trial in July 2015 and then filed an amended motion in February 2016.  Following a hearing, the trial court denied the amended motion in July 2016; Appellant subsequently filed a timely notice of appeal.  This case was docketed to the April 2017 term and was thereafter submitted on the briefs.

legal standard when considering his motion for new trial. Finding no error, we affirm.

1. This appeal involves two trials; the first trial concerned victim Steven Yearwood (Counts 7 through 9), and the second trial involved victim Randall Huling (Counts 1 through 4). Appellant's claims on appeal relate only to the second trial, but we begin by examining the evidence adduced during each trial.

(a) The Yearwood Trial

Yearwood was a frequent visitor at a homeless encampment in Hall County, Georgia, where Appellant resided; in the week leading up to the incident in question, Yearwood had been asked by another resident to permanently leave the camp. Undeterred, Yearwood returned to the camp and ended up alone in the camp with Appellant. When other residents of the encampment returned, they observed that Yearwood — who was on his hands and knees — was being repeatedly kicked in the face by Appellant. Yearwood sustained numerous injuries as a result of the beating, including a split ear; the jury heard testimony that Yearwood's ear was later "sewn up" by Appellant as Yearwood screamed in protest. Appellant testified on his own behalf, claiming that he acted in self-defense. The jury found Appellant guilty of two counts of

2

aggravated battery.

(b) The Huling Trial

On August 14, 2014, Huling was drinking alcohol behind a liquor store in Hall County, Georgia. At some point that morning, Huling was first involved in an altercation with James Wise. The altercation between Wise and Huling involved little more than an argument and a shove; though Huling was reportedly found on the ground following the altercation, he remained ambulatory and coherent. As the day progressed, more individuals congregated in the area to drink, and Appellant was seen in the vicinity during this time. Witness Pestos Charlie, who was amongst those who had gathered to drink, observed Appellant and Huling get into a physical altercation. Fearing that he would be drawn into the fight, Charlie walked away and, from a considerable distance, observed Appellant repeatedly slam Huling's head into a guardrail. The next morning, Huling was discovered supine in a ditch behind the guardrail; Huling was incoherent, naked from the waist down, and missing shoes. A medical examiner testified that Huling suffered a fracture at the base of his skull and a resulting "contrecoup" brain injury, which occurs when the brain strikes the skull in response to a blow to the head. According to the medical examiner,

Huling's injuries were consistent with his head striking a guardrail, and Huling died as a result of blunt force trauma.

The State also presented testimony that Appellant, while in pretrial detention, had admitted to a fellow detainee that he had smashed Huling's head into the guardrail three times and, further, that Charlie had witnessed the assault.

In his defense, Appellant presented the testimony of a medical doctor with a specialty in forensic pathology. The expert testified that, though Huling died from blunt force trauma to the head, those injuries were caused by a fall during which he struck his head from behind. The jury found Appellant guilty of Counts 1 through 4.

(c) Though Appellant does not challenge the legal sufficiency of the evidence supporting his convictions in both trials, we have reviewed the record and conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that Charlie made statements in an interview with investigators that were inconsistent with his trial testimony and that trial counsel

4

was ineffective for failing to impeach Charlie with those prior inconsistent statements. We disagree.

In order to prevail on his claim that trial counsel was ineffective, Appellant must show both that counsel's performance was deficient and that the deficient performance was prejudicial. See Terry v. State, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). In reviewing counsel's performance, we "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011) (quoting Strickland v. Washington, 466 U. S. 668, 689 (104 SCt 2052, 80 LE2d 674) (1984)). Accordingly, "a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" (Citation omitted.) Brown v. State, 288 Ga. 902, 909 (708 SE2d 294) (2011). With respect to the second Strickland prong,

5

to show that he was prejudiced by the performance of his lawyer, [Appellant] must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Arnold v. State, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013) (quoting Strickland, 466 U. S. at 694). "If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong." Rector v. State, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009).

Appellant contends that Charlie, in a recorded interview with investigators, inaccurately described Huling's race and physical appearance and gave a different account of how Appellant slammed Huling's head into the guardrail; according to Appellant, trial counsel should have used these prior inconsistent statements to impeach Charlie. During the motion for new trial hearing, the two attorneys who represented Appellant gave conflicting assessments of the adequacy of Charlie's cross-examination. However, as we have previously emphasized, because Strickland's standard for deficient

6

performance is an objective one, "'hindsight has no place in an assessment of the performance of trial counsel,' and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." (Citation omitted.) Shaw v. State, 292 Ga. 871, 876 (3) (a) n.9 (742 SE2d 707) (2013).

As an initial matter, Charlie's video-recorded interview is, at best, muddled. As one of Appellant's trial counsel testified at the motion for new trial hearing — and as our own review of the interview confirms — it is exceedingly difficult to understand Charlie's speech and to follow his account of the day in question. It is not at all clear from the interview whether Charlie incorrectly described Huling or if he was simply referencing another person present at the scene; likewise, it is not at all obvious, as Appellant argues, that Charlie demonstrates during this interview an alternative version of how Appellant rammed Huling's head into the guardrail.

Further, trial counsel's cross-examination of Charlie was sound. The defense theory at trial was that Huling died as a result of a fall and that Charlie was an unreliable witness. Notably, on a point that Charlie made clear during the video-recorded interview — namely that he observed Appellant roll

7

Huling's body down a hill toward the ditch in which Huling was eventually discovered — trial counsel managed to elicit testimony from Charlie that this portion of his statement was untrue. In addition to highlighting this inconsistency, trial counsel also elicited testimony from Charlie during cross-examination that, at the time of the offense, Charlie was drunk and standing hundreds of feet away from the scene. In short, trial counsel's cross-examination furthered the defense theory that Charlie's recollection was questionable and highlighted to the jury that Charlie had previously made an untrue statement.

In light of the defense theory below, trial counsel's exhaustive cross-examination of Charlie, and the fact that portions of Charlie's interview were nearly indiscernible, trial counsel's failure to attempt to impeach Charlie with his prior nebulous statements that *might* or *might not* have been inconsistent with his trial testimony was not so patently unreasonable that no competent attorney would have opted for this strategy. Romer, supra.

3. Appellant also argues that the trial court applied an incorrect standard to his claim that the jury's verdicts were against the weight of the evidence. There is no merit to this claim.

"When faced with a motion for new trial based on these general grounds, the trial court has the duty to exercise its discretion and weigh the evidence." Walker v. State, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). Here, the trial court's order denying Appellant's motion for new trial recounts the evidence presented at Appellant's two trials and specifically concludes that the verdicts were not contrary to the evidence; the trial court did not, as Appellant contends, merely review the sufficiency of the evidence under Jackson v. Virginia. While the trial court declined to exercise its discretion to *grant* Appellant a new trial, the trial court fully satisfied its duty to *consider and evaluate* the claim.

Judgment affirmed. All the Justices concur.

Decided August 28, 2017.

Murder. Hall Superior Court. Before Judge Fuller.

Kevin A. Anderson, for appellant.

Lee Darragh, District Attorney, Juliet Aldridge, Laura K. Lukert, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.