**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 30, 2018**

# In the Court of Appeals of Georgia

A17A1558. HARDIN v. THE STATE;
A17A1668. MEINTZ v. THE STATE.

MCMILLIAN, Judge.

In 2009, David Hardin was indicted on three counts of rape, one count of statutory rape, one count of incest, one count of aggravated sexual battery, seventeen counts of child molestation, and one count of attempt to commit a felony arising from alleged sexual acts committed against his stepdaughter, S. H., from the time she was six years old. Following a jury trial, Hardin was convicted of all three counts of rape, statutory rape, aggravated sexual battery, and thirteen counts of child molestation.[1] In Case No. A17A1558, Hardin appeals the denial of his motion for new trial, asserting that (1) his sentences for the statutory rape and child molestation convictions are void and (2) he received ineffective assistance of counsel.

---

[1] The trial court granted a directed verdict on the count of incest and three counts of child molestation. The jury acquitted Hardin of one count of child molestation and attempt to commit a felony.

Hardin was tried along with two co-defendants, Shawn Meintz and Kevin Hicks.[2] In Case No. A17A1668, Meintz was indicted on one count of rape, one count of aggravated child molestation, one count of statutory rape, and four counts of child molestation for his alleged role in the sexual crimes committed against S. H. The jury convicted him of statutory rape and three counts of child molestation.[3] In his sole enumeration of error, Meintz asserts that he received ineffective assistance of counsel. Hardin and Meintz were tried jointly, and we have consolidated their appeals for review. For the reasons that follow, we affirm the convictions in both cases, but vacate the sentences and remand the cases for resentencing.

Viewed in the light most favorable to the jury's verdict,[4] the evidence shows that, at the time of his arrest, Hardin lived in a mobile home park in Chickamauga, Georgia with his wife, S. H., and two other children. An investigator with the Chickamauga Police Department was conducting a routine patrol in the mobile home park in October 2008 when he was approached by residents complaining about

---

[2] Hicks is not a party to this appeal.

[3] The jury acquitted Meintz of rape, aggravated child molestation, and one count of child molestation.

[4] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

improper sexual conduct occurring in Hardin's home. Through the subsequent investigation, law enforcement officials discovered allegations that Hardin had repeatedly molested his stepdaughter over the past eight years, beginning when she was six years old. There was also evidence that Hardin allegedly recruited dozens of men to have sex with S. H. while he watched and masturbated. Hardin and these other men also provided S. H. with drugs and alcohol beginning at a young age and viewed pornography with her.

S. H., who was 14 years old at the time the crimes were reported to police and 15 years old at the time of trial, testified that, from the time she was approximately six years old, Hardin began touching her breasts, buttocks, and vagina with his hands and his penis and that this conduct occurred when they lived in Tennessee and continued the entire time they lived in their mobile home in Walker County, Georgia. Hardin also used various sex toys to assault her. S. H. also testified that Hardin would bring other men to their home and force her to have both vaginal and oral sex with them while he watched. These other men included co-defendants Meintz and Hicks. S. H. explained that she initially resisted having sex with Meintz, but Hardin held her down and duct taped her mouth to prevent her from biting until she eventually got tired of fighting. S. H. also testified about a friend of hers, B. P., who lived in the

3

same mobile home park. S. H. witnessed one man, Zach Medlin, rape B. P. before Hardin then forced S. H. to have sex with Medlin. B. P., who also testified at trial, said that after Medlin raped her, she saw him having sex with S. H. while Hardin watched.

In executing a search warrant at the Hardin home, officers discovered a variety of pornographic movies and magazines, and an ultraviolet light revealed numerous semen stains on the walls, ceiling, and floor of the master bedroom.[5] The initial investigator later interviewed Meintz in Chattanooga after he voluntarily agreed to meet, and Meintz told him that he had helped the Hardins move from Tennessee into their mobile home in Chickamauga. He admitted that he had sex with S. H. but claimed it only happened when the Hardins were still living in Tennessee. However, he also admitted that S. H. rubbed his penis while he was in Georgia and that he became aroused. Meintz was later arrested and interviewed again, and after waiving

_____

[5] While speaking with witnesses regarding the initial allegations against Hardin, the investigator was informed that the Hardin home was being cleaned out. When officers rushed to secure the home, it appeared the family was in the process of vacating the house. A number of items that officers later learned were used in the crimes were never located, including homemade videos of the molestation, sex toys used on S. H., and the duct tape used to subdue her.

his Miranda rights, he reiterated these claims. Although he was 30 years old at the time, Meintz claimed that he thought of himself as 14 years old and S. H.'s fiancé.

At trial, the State also presented the testimony of Preston Dennel, one of the men Hardin recruited to have sex with S. H. while he watched. Dennel, who had previously entered a guilty plea, testified that he had sex with S. H. because he felt Hardin would hit S. H. if he refused to have sex with her. Following the jury's verdicts, the trial court sentenced Hardin to serve consecutive life sentences on each of the three counts of rape convictions; twenty years on the statutory rape count; a consecutive life sentence on the count of aggravated sexual battery; twenty years to serve on eleven counts of child molestation, with six of the sentences to be served concurrently and five to be served consecutively; and twenty years of probation each on two counts of child molestation, consecutive to all previous counts. The trial court sentenced Meintz to serve twenty years on the statutory rape conviction and a total of sixty years on the counts of child molestation, with twenty years to be served concurrently to the count of statutory rape, and the remaining time to be probated concurrently.

1. We turn first to Hardin's assertion that he received ineffective assistance of trial counsel. To prevail on this claim, Hardin "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." (Citation omitted.) *Brewer v. State*, 301 Ga. 819, 821 (3) (804 SE2d 410) (2017). To prove deficient performance, an appellant "must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation and punctuation omitted.) *Keener v. State*, 301 Ga. 848, 850 (2) (804 SE2d 383) (2017). In reviewing counsel's performance on appeal, "we must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) Id. If an appellant fails to satisfy either prong of this test, we need not examine the other prong. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id.

(a) Hardin first asserts that his counsel was ineffective for failing to object to testimony that he claims illegally bolstered S. H.'s credibility. Hardin points to the following testimony, in which the State questioned a detective[6] regarding "grooming behavior":

> Q: Now, during your training and experience in investigating at least five to 700 child sexual abuse cases, have you ever encountered what is known as grooming behavior, what is that?
>
> A: Grooming behavior is something that I have seen in children, where they may be exposed to pornography, they may be exposed to maybe comments coming from the perpetrator or perpetrators making them feel more comfortable, you know, over a time span of anywhere from days to weeks, to make them feel more like the behavior is not abnormal. It could also be in making the child feel like, especially if it starts at an earlier age, I have actually worked cases where this is what the child believes to be normal behavior, or the way it's normal for them to receive affection from their parent or guardian.

It is true "that in no circumstance may a witness' credibility be bolstered by the opinion of another as to whether the witness is telling the truth." (Citation and

---

[6] The detective, who is a member of a local FBI crimes against children task force, was asked by the initial responding officer to assist in the investigation because of his experience and expertise.

punctuation omitted.) *Leggett v. State*, 331 Ga. App. 343, 347 (4) (771 SE2d 50) (2015). However, nowhere in the exchange relied upon by Hardin does the detective testify as to whether he believed S. H. to be credible or otherwise opine on her veracity. Rather, the detective explained the process of grooming behavior based on his general experience. And when a witness's statement does not directly address the credibility of another witness, there is no improper bolstering. See *Jones v. State*, 299 Ga. 40, 44 (785 SE2d 886) (2016). "Thus, a bolstering objection would have been without merit, and failure to make a meritless objection cannot be evidence of ineffective assistance." (Citation and punctuation omitted.) *Leggett*, 331 Ga. App. at 348 (5) (a).

(b) Hardin also asserts that trial counsel was ineffective for failing to object to irrelevant and prejudicial testimony. Hardin again points to the State's direct examination of the detective:

Q: Okay. And now [the responding investigator] brought you in for a couple of reasons, and he asked you to get involved in the investigation of this case for a couple of reasons; is that right?

A: Yes.

Q: And first that there was concern that maybe this would be a Federal case?

8

A: Possibly because there was a possible incidence [sic] in Tennessee.

Hardin argues that this testimony was irrelevant because it does not tend to prove or disprove whether Hardin committed the crimes for which he was accused and that it was prejudicial because it informed the jury that similar activity had occurred in another state and suggested the case was "serious enough to get 'the Feds' involved."

"Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *Gregoire v. State*, 309 Ga. App. 309, 311 (2) (711 SE2d 306) (2011). And, "[r]easonable decisions as to whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal." (Citation and punctuation omitted.) *Ballard v. State*, 297 Ga. 248, 254 (6) (h) (773 SE2d 254) (2015). Here, the testimony was offered simply to explain the detective's role in the matter and the reasons that he was asked to assist in the investigation before turning to the substance of his investigation. At the motion for new trial hearing, trial counsel testified that he did not recall his exact reason for not objecting to this testimony. Given the context of this case, we cannot say that no reasonable attorney would have failed to object to this

9

testimony. See *Williams v. State*, 282 Ga. 561, 564 (5) (a) (651 SE2d 674) (2007) ("An attorney's decision to forego objecting to . . . leading questions used to establish routine points constitutes reasonable trial strategy.").

Moreover, Hardin fails to show how the testimony regarding the possibility of federal jurisdiction prejudiced him. Because S. H. testified in much more detail regarding the acts of sexual abuse committed by Hardin in Tennessee before the family moved to Georgia, Hardin cannot show a reasonable probability that the outcome of the trial would have been different had his trial counsel objected to the detective's testimony. See *Wilson v. State*, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015) (failure of trial counsel to object to cumulative evidence does not support claim of ineffective assistance).

(c) Hardin next contends that his trial counsel was ineffective for unreasonably eliciting testimony that bolstered S. H. Hardin points to the following testimony elicited during cross-examination of the detective regarding his experience with delayed and false disclosures:

> Q: And you had talked earlier when [the State] was asking you about victims, that victims tend to disclose more once a perpetrator is removed. And you based that in particular on your personal experience as an investigator?

A: Yes.

Q: And how many cases, I would ask you to reflect back in particular on your own experience, how many cases have you seen where that happened?

A: Numerous cases, I'm currently investigating one now where that happened. That I can't go into great detail about, but that is my current investigation.

Q: There is one.

A: I have had occasional – have on several occasions when the child felt safer, or the child will give a partial disclosure and then they're kind of testing the water to see what happens. If, you know, there are a lot of times that I have children actually tell me that their big fear was being removed from the home or they have also had, you know, the fear of disclosing and nothing happening and then being put back in that environment and the situation getting worse.

Trial counsel then questioned the detective regarding whether older children were more likely to "develop stories that are not true and deliver those in a convincing manner because of their age." And the detective replied:

A: Yes, I would to a certain extent [agree] that would be true. It is pretty rare though when these children are giving a false disclosure that they

11

initially only give a partial disclosure. Generally, when children are older and they give a disclosure like this –

Q: I'm sorry to interrupt you, sir, is that based on . . . [p]ersonal experience, okay.

A: Yes, it is. Based on my personal experience I have seen children generally, when they are giving a false disclosure, they come out with a story that is usually very complete and detailed and then you go back and then you have to investigate and either prove or disprove some of the details. It's very rare that a child is giving a false disclosure and have a fear of getting someone in trouble or not wanting to give a complete disclosure, but it is very common for children to give a partial disclosure in their initial interviews.

We fail to see how this testimony constitutes improper bolstering of S. H.'s credibility. At no point does the detective opine as to S. H.'s truthfulness. As discussed in Division 1 (a), the detective instead responded regarding his personal experience in investigating sexual abuse cases generally. Moreover, at the new trial hearing, trial counsel testified that these cross-examination questions were part of a trial strategy that rested on attacking S. H.'s credibility to show the jury that she lied. Specifically, he planned to attack S. H.'s disclosures by noting the inconsistencies in her various disclosures and that these inconsistencies arose from her fabricating the

allegations. In addition, he wanted to challenge the detective's "grandiose assertions of his experience." Upon review of the record, we cannot say that this strategy or the questions were so patently unreasonable as to amount to deficient performance. See *Williams v. State*, __ Ga. ___, ___ (4) (c) (807 SE2d 350) ("cross examinations are quintessential trial strategy and will rarely constitute ineffective assistance") (citation omitted). See also *Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016) ("hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim") (citation and punctuation omitted).

(d) Hardin also asserts that his trial counsel was ineffective for failing to make the proper objection when the State introduced prior consistent statements made by S. H. During its direct examination of S. H., the State sought to admit into evidence writings and drawings that S. H. had made. Trial counsel offered a continuing witness objection to these exhibits, which was eventually sustained, and the exhibits did not go out with the jury. Although he could not recall specifically, trial counsel testified at the new trial hearing that while he did not want the exhibits to go out with the jury, he may have allowed the statements to be admitted into evidence because, in addition

to prior consistent statements, they also contained impossible and inconsistent allegations.

It is clear from the record that the defense at trial was premised on the theory that S. H. was lying about her allegations as evidenced by the inconsistencies in her various statements. Moreover, although trial counsel objected on different grounds, the trial court nonetheless addressed whether S. H.'s credibility had been attacked such that the prior statements would be admissible before allowing the State to continue.[7] "A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." *Tuff v. State*, 278 Ga. 91, 94 (4) (597 SE2d 328) (2004). And the trial court ultimately instructed the jury on both prior inconsistent and prior consistent statements. Accordingly, Hardin's assertion that he received ineffective assistance on this basis is without merit. See *Boyt v. State*, 286 Ga. App. 460, 462-63 (2) (a) (649 SE2d 589) (2007).

---

[7] In addition, counsel for Hicks conceded that he had attacked S. H.'s credibility on cross-examination with respect to at least part of the contested statements.

14

(e) Hardin also enumerates as error his trial counsel's failure to object to various hearsay statements. After S. H. testified at trial, the State recalled an investigator to testify regarding part of S. H.'s interview at the Children's Advocacy Center. The State then played a portion of the video-recorded interview for the jury before questioning the investigator regarding several instances of S. H.'s prior inconsistent statements included in the interview. Hardin asserts that trial counsel should have objected because the interview contained inadmissible prior consistent statements. At the new trial hearing, trial counsel again testified that, although he could not specifically recall, the only trial strategy available to him was to exploit the inconsistencies in S. H.'s various statements. Based on the record before us, we cannot say that trial counsel's decision not to object in order to exploit the inconsistencies contained in the interview was patently unreasonable. Moreover, as the State argues, the interview was admitted by the State to rehabilitate S. H. after her credibility was attacked on cross-examination by counsel for all defendants.[8] Thus, the prior consistent statements were admissible. See *Tuff*, 278 Ga. at 94 (4). And the

---

[8] For example, Hardin's trial counsel questioned S. H. about her living with 13 other girls at a group home, some of whom had been molested, and that S. H. had talked to these girls about their experiences with sexual abuse, suggesting that these conversations may have influenced S. H.'s testimony. His trial counsel also questioned S. H.'s perception of reality due to her past use of certain drugs.

15

failure to make a meritless objection cannot amount to ineffective assistance. *Crump v. State*, 301 Ga. 871, 873 (2) (804 SE2d 364) (2017).

(f) Hardin further asserts that his trial counsel was ineffective for failing to object to improper character evidence. During the direct examination of an investigator, the State asked "Would it be fair to say all three of the defendants today, cleaned up somewhat for coming to court from the time of your first meeting with them?" The investigator replied, "Yes, sir." At the new trial hearing, trial counsel testified that he considered objecting but that "sometimes you choose not to object hoping that it just sort of flows on by and you don't call attention to something that is distinctly negative and legally objectionable[.]" And the record reveals that there was no follow up to this question and the issue was never raised again.[9] We find that trial counsel's decision to forego objecting to this fleeting question was a reasonable trial strategy. See *Sowell v. State*, 327 Ga. App. 532, 541 (4) (b) (759 SE2d 602)

---

[9] Hardin's reliance on *Decastro v. State*, 221 Ga. App. 83 (470 SE2d 748) (1996) (physical precedent only), is flawed. Not only is *Decastro* not binding authority, it is easily distinguishable. In that case, the prosecutor published a photograph of the defendant to the jury in which the defendant appeared "ominous" and told the jury that the defendant's appearance at trial was a "deception." 221 Ga. App. at 84.

(2014) ("minimizing objections in an effort to show the jury that the defense had nothing to hide was sound strategy").

(g) Lastly, Hardin asserts that his trial counsel was ineffective for failing to move for a limiting instruction when the prosecution tendered statements from non-testifying co-defendants. On direct examination, an investigator testified regarding his interview with co-defendant Meintz in which Meintz admitted to S. H. "rubbing his crotch" and to asking S. H. for sex. The investigator also testified that Meintz told him he would spend the night in the Hardin home and bring food, money, and cigarettes to spend time with S. H. And two police officers who assisted in the interview of co-defendant Hicks testified that both before and after receiving *Miranda* warnings, Hicks admitted to having sex with S. H.

At the motion for new trial hearing, trial counsel testified that the failure to object to this testimony was a strategic decision on his part. Because the trial court had already ruled that the statements were admissible, he felt that requesting a limiting instruction would draw undue attention to the statements. Our Supreme Court has found this to be a reasonable trial strategy.[10] See *Phillips v. State*, 285 Ga. 213,

_____

[10] We also note that the jury found Hardin not guilty of the only count of the indictment that related to Hicks, count 13 (alleging Hardin committed the offense of child molestation by watching Hicks have intercourse with S. H.)

17

220 (5) (c) (675 SE2d 1) (2009) (where trial counsel testified he chose not to seek limiting instruction because he did not wish to draw attention to prior convictions, omission was trial strategy and not evidence of ineffective assistance).

Moreover, pretermitting whether this failure to request a limiting instruction was deficient performance, in light of the overwhelming evidence of his guilt, Hardin cannot show the requisite prejudice in order to sustain his claim of ineffective assistance. See *Woods v. State*, 304 Ga. App. 403, 410 (1) (a) (i) (696 SE2d 411) (2010); *Stroud v. State*, 284 Ga. App. 604, 618 (3) (h) (644 SE2d 467) (2007). Accordingly, the trial court did not err in denying Hardin's motion for new trial on the basis of ineffective assistance of counsel.

2. Having determined that his convictions should be affirmed, we turn now to Hardin's claim that, in light of the Georgia Supreme Court's interpretation of former OCGA § 17-10-6.2 (b) in *State v. Riggs*, 301 Ga. 63 (799 SE2d 770) (2017), his sentences for statutory rape and child molestation are void because they do not each include a split sentence.

At the time of Hardin's offenses and conviction, OCGA § 17-10-6.2 (b) provided:

18

. . . any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to the offense. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year . . .

In *Riggs*, our Supreme Court held that this statute required a split sentence for *each* conviction for applicable sexual offenses. 301 Ga. at 64-67 (1). However, our General Assembly recently passed legislation amending OCGA § 17-10-6.2, which became effective on July 1, 2017.[11] OCGA § 17-10-6.2 (b) now makes clear that "the requirement that the court impose a probated sentence of at least one year shall only apply to the final consecutive sentence imposed."[12] The State, at least implicitly,

---

[11] See Ga. L. 2017, p. 194 (HB 341); OCGA § 1-3-4 (a) (any act that becomes law between January 1 and June 30 becomes effective on July 1 unless otherwise specified).

[12] OCGA § 17-10-6.2 (b) in its entirety provides:

Except as provided in subsection (c) of this Code section, and notwithstanding any other provisions of law to the contrary, any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to such sexual offense. No portion of the

19

agrees that under former OCGA § 17-10-6.2 (b) and *Riggs*, some of Hardin's sentences would need to be vacated, but maintains that Hardin's sentence as a whole is nonetheless proper because it complies with the current version of OCGA § 17-10-6.2 (b), which should be applied retroactively. We disagree.

"Laws generally prescribe only for the future; they cannot ordinarily have a retrospective operation." (Citation and punctuation omitted.) *Dept. of Corrections v. Hicks*, 209 Ga. App. 154, 155 (433 SE2d 64) (1993). And, "[t]he settled rule for the construction of statutes is not to give them a retrospective operation, unless the language so imperatively requires." (Citation and punctuation omitted.) Id. See also *Deal v. Coleman*, 294 Ga. 170, 174-75 (1) (b) (751 SE2d 337) (2013) (presumption against retroactive legislation is deeply rooted in our jurisprudence and courts

> mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the court. Any such sentence shall include, in addition to the mandatory term of imprisonment, an additional probated sentence of at least one year; provided, however, that when a court imposes consecutive sentences for sexual offenses, the requirement that the court impose a probated sentence of at least one year shall only apply to the final consecutive sentence imposed. No person convicted of a sexual offense shall be sentenced as a first offender pursuant to Article 3 of Chapter 8 of Title 42 or any other provision of Georgia law relating to the sentencing of first offenders.

therefore generally insist upon clear indication in the statutory text that a statute is to be applied retroactively). OCGA § 17-10-6.2 includes no such retroactive language.

Moreover, even if OCGA § 17-10-6.2 contained language requiring retroactive application, the ex post facto doctrine forbids the application of any new punitive measure to a crime already committed.

> [A]n ex post facto law punishes conduct which was innocent when done; alters the quality or degree of, or inflicts a greater punishment for, a crime committed previously; requires less or different evidence than was required before the crime was committed; or deprives the offender of any substantial right possessed at the time the offender committed the act.

(Citations and punctuation omitted.) *Thompson v. State*, 278 Ga. 394, 395 (603 SE2d 233) (2004). Because the current form of OCGA § 17-10-6.2, which governs the punishment for certain sexual offenses, reduces the amount of probation required for sentencing on multiple counts, it alters the quality or degree of punishment for the crimes of which Hardin was convicted. Thus, this statute cannot retroactively apply to alter Hardin's sentences, and we are bound by our Supreme Court's holding in

*Riggs*. Hardin's sentences in counts 4, 7-12, 14-18, 20, and 22 must be vacated, and he must be resentenced according to *Riggs*.[13]

Although neither Hardin nor the State raised as error count 17, for which he received 20 years of probation,[14] we note that such probation-only sentences are void, unless the trial court enters written findings regarding each of the OCGA § 17-10-6.2 (c) (1) factors to justify the deviation below the mandatory minimum. Former OCGA § 17-10-6.2 (b) required that the sentence for any person convicted of a sexual offense

> ***shall include the minimum term of imprisonment*** specific in the Code section applicable to the offense. ***No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated***, deferred, or withheld by the sentencing court and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year.

---

[13] Hardin does not include count 17 in his assertion that a split sentence is required, but we are required to correct a void sentence even if it is not raised on appeal. See *von Thomas v. State*, 293 Ga. 569, 573 (2) (748 SE2d 446) (2013) ("[A] sentence which is not allowed by law is void, and its illegality may not be waived.") (citations, punctuation, and emphasis omitted). Hardin's convictions for aggravated sexual battery and rape are not subject to OCGA § 17-10-6.2, as those crimes are not one of the sexual offense crimes enumerated in subsection (a).

[14] We note that the sentence on count 22 was also 20 years of probation.

(Emphasis supplied.) Id. The mandatory minimum sentence is five years for child molestation, OCGA § 16-6-4 (b) (1). Thus, for those counts in which the trial court did not sentence Hardin to the mandatory minimum, including counts 17 and 22, with the required split sentence, those sentences are also void for this additional reason. See *Jackson v.* State, 338 Ga. App. 509, 511 (790 SE2d 295) (2016) (although not raised by either party, defendant's probation-only sentences for sexual exploitation of child found void under § 17-10-6.2 (b)); *New v. State*, 327 Ga. App. 87, 109 (5) (755 SE2d 568) (2014) (because trial court failed to sentence defendant in accordance with OCGA § 17-10-6.2 (b), sentence vacated and case remanded to trial court for resentencing).

Accordingly, we must vacate each of Hardin's sentences that does not include a split sentence as required by former OCGA § 17-10-6.2 (b) or does not impose the mandatory minimum and remand this case for resentencing consistent with this opinion. See *Spargo v. State*, 332 Ga. App. 410, 412 (773 SE2d 35) (2015).

### *Case No. A17A1668*

3. Meintz separately appeals his convictions for statutory rape and three counts of child molestation. In his sole enumeration of error, Meintz contends that he

23

received ineffective assistance of counsel because trial counsel did not call two witnesses to testify on his behalf.

The decision as to which witnesses to call is a matter of trial strategy within the exclusive purview of the attorney after consultation with the client. *Felder v. State*, 286 Ga. App. 271, 277 (5) (648 SE2d 743) (2007). Thus, these decisions will generally not constitute ineffective assistance. Id. Meintz testified at the new trial hearing that his trial counsel refused to call Savannah Simmons and Linda Hardin as witnesses, against his express wishes. According to Meintz, these witnesses would have testified that Meintz and S. H. "were only sexually active in Tennessee, not in Georgia." However, Meintz failed to proffer the testimony of either witness at the motion for new trial hearing and therefore has no evidence that the witnesses would have provided relevant or helpful testimony.[15] Thus, he cannot show either deficient performance or resulting prejudice, and this enumeration of error fails. See id. at 278 (5) (a) ("Where, as here, the defendant fails to proffer the testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would

---

[15] We also note that trial counsel testified that he believed Linda Hardin would not be a useful witness for the defense. He also testified that Meintz had never told him about anyone named Savannah Simmons. At the conclusion of the hearing, the trial court stated that he found trial counsel was "extremely effective in the representation of his client during the trial."

24

have ended differently."). Accordingly, the trial court did not err in denying Meintz' motion for new trial.

4. Although not enumerated by Meintz, we also address the sentences imposed by the trial court. See *Hughes v. State*, 341 Ga. App. 594, 597-98 (3) (802 SE2d 30) (2017) (we are required to correct a void sentence, and its illegality may not be waived). For the reasons discussed in Division 2, we must vacate Meintz's sentences in counts 4, 6, and 7 for child molestation, as they do not include both the mandatory minimum[16] and a split sentence and remand for resentencing consistent with this opinion.

*Judgments affirmed in Case Nos. A17A1558 and A17A1668, and sentences vacated and cases remanded for resentencing. Barnes, P. J., and Mercier, J., concur.*

---

[16] Meintz's sentences in counts 6 and 7 include only 20 years of probation.